UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

**CV 08      0183**

| | |
|---|---|
| IRENE PIERRE, | ) |
| | ) |
| Plaintiff, | )   Case No._____ |
| | ) |
| v. | )   **JURY TRIAL REQUESTED** |
| | ) |
| MONSANTO COMPANY, | )   MDL #1699 |
| PFIZER, INC., | ) |
| PHARMACIA CORPORATION, | ) |
| G.D. SEARLE L.L.C., | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW plaintiff Irene Pierre, the surviving spouse of decedent Archie Pierre ("Decedent"), and for her Complaint, states and alleges as follows:

1.      This is a civil action brought by Plaintiff Irene Pierre ("Plaintiff") based on Decedent's fatal heart attack which occurred while ingesting the prescription medication Bextra. This action seeks monetary damages for the wrongful death of decedent caused by the drugs named herein and ingested by Decedent.

## PARTIES

2.      Plaintiff is the surviving spouse of Decedent. Plaintiff is a person of the full age and majority and is a resident of Greenwell Springs, Louisiana.

3.      Defendant Monsanto Company (hereinafter "defendant" Monsanto"), is a Delaware corporation with its principal place of business in St. Louis, Missouri. At all times relevant hereto, Monsanto was in the business of designing, testing, manufacturing, marketing, selling and distributing the pharmaceutical product Bextra. For purposes of federal diversity jurisdiction, Monsanto is a citizen of the State of Missouri.

4.     Defendant G. D. Searle LLC. (hereinafter "defendant Searle") is a subsidiary of Pharmacia Corporation, and is a Delaware Corporation, with its principal place of business in Illinois. At all times relevant hereto, defendant Searle was in the business of designing, manufacturing, marketing, selling and distributing the pharmaceutical product Bextra.

5.     Defendant Pharmacia Corporation (hereinafter "defendant Pharmacia") is a Delaware Corporation licensed and registered to do business in California. At all times relevant hereto, defendant Pharmacia was in the business of designing, testing, manufacturing, marketing, selling and distributing the pharmaceutical product Bextra.

6.     Defendant Pfizer Inc. (hereinafter "defendant Pfizer") is a Delaware corporation, and at all times relevant hereto, defendant Pfizer was in the business of designing, testing, manufacturing, marketing, selling and distributing the pharmaceutical product Bextra. Defendant Pfizer is licensed and registered to do business in California.

## JURISDICTION AND VENUE

7.     Plaintiff seeks in excess of $75,000, excluding costs and interest. This Court has jurisdiction of this matter under 28 U.S.C. 1332.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because defendants are subject to personal jurisdiction in this judicial district.

## FACTS COMMON TO ALL COUNTS

9.     Bextra is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. Defendants Searle, Pharmacia, Monsanto and Pfizer (hereinafter "defendants") did manufacture, design, test, package, market and distribute this drug. Defendants encouraged the use of this drug in improper customers, misrepresented the safety and efficacy of this drug and concealed or understated its dangerous side effects. These

2

defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. These defendants did this to increase sales and profits.

10.    At all times relevant hereto, defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to plaintiff, and therefore punitive damages are appropriate.

11.    This Complaint seeks redress for damages sustained by plaintiff resulting from Decedent's death arising out of his use of Bextra, manufactured and sold by defendants, including loss of love and affection, funeral expenses, past and future emotional distress, loss of wage earning capacity of Decedent, and pain and suffering.

12.    Decedent was prescribed, and taking Bextra on or before, September 27, 2002, when he suffered a fatal heart attack

13.    The damages sought herein are the direct and proximate result of defendants' wrongful conduct in connection with designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the prescription drug Bextra.

14.    At all times relevant hereto, defendants were engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing,

3

licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the pharmaceutical drug Bextra throughout the United States.

15.     Had defendants properly disclosed the risks associated with using Bextra, plaintiff would not have taken it for treatment of pain.

## COUNT I
## NEGLIGENCE

16.     Plaintiff repeats and realleges each of the allegations contained in this Petition.

17.     Defendants, directly or indirectly, negligently and/or defectively designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Bextra.

18.     At all times material hereto, defendants had a duty to users and/or consumers of Bextra, including plaintiff, to exercise reasonable care in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of Bextra.

19.     Defendants breached that duty and were negligent in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of Bextra in that: Bextra was defective when put on the market by defendants; that with such defect, Bextra was reasonably certain to be dangerous when put to normal use; and that defendants failed to use reasonable care in designing or making Bextra or in inspecting it for defects. Specifically, defendants breached their duty by, among other things:

> a.     Failing to include adequate warnings that would alert the medical,
> pharmaceutical and/or scientific communities, and users and/or consumers

4

of the drug, including plaintiff, to the potential risks and serious side effects of the drug;

b.    Failing to adequately and properly test and inspect the drug before placing the drug on the market;

c.    Failing to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, heart attack, stroke and/or death.

d.    Failing to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff, of the potential risks and other serious side effects associated with the drug, including, among other things, heart attack, stroke and/or death;

e.    Failing to provide adequate post-marketing warnings or instructions after defendants knew or should have known of the significant risks associated with the use of the drug;

f.    Failing to recall and/or remove the drug from the stream of commerce despite the fact that defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug;

g.    Encouraging misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including plaintiff, in order to make a profit from sales.

20.    Defendants knew or should have known that Bextra caused unreasonably dangerous risks and serious side effects of which users and/or consumers of the drug, including plaintiff, were not aware. Defendants nevertheless advertised, promoted, marketed, sold,

5

distributed and/or supplied Bextra knowing that there were safer methods for pain relief.

21.    As a direct, legal, proximate and producing result of the negligence of defendants, plaintiff sustained injury and damages.

22.    By reason of the foregoing, plaintiff was damaged by the negligence and wanton and willful recklessness of the defendants.

WHEREFORE, plaintiff requests judgment against defendants for a reasonable sum of money damages in excess of $75,000, for punitive damages, for prejudgment and post-judgment interest, for costs herein incurred and expended and for such other and further relief as the Court deems just and proper.

**COUNT II**
**STRICT PRODUCTS LIABILITY**
**DEFECTIVE DESIGN**

23.    Plaintiff repeats and realleges each of the allegations contained in this Petition.

24.    At all times material hereto, defendants have engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the drug Bextra, which is defective and unreasonably dangerous to users and/or consumers of the drug, including plaintiff.

25.    At all times material hereto, Bextra was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

a.    When placed in the stream of commerce, the drug contained unreasonably dangerous design defects and was not reasonably safe and fit for its

6

intended or reasonably foreseeable purpose or as intended to be used,
thereby subjecting users and/or consumers of the drug, including plaintiff,
to risks which exceeded the benefits of the drug;

b.     The drug was insufficiently tested;

c.     The drug caused harmful side effects that outweighed any potential utility;

d.     The drug was not accompanied by adequate labeling or instructions for
use to fully apprise the medical, pharmaceutical and/or scientific
communities, and users and/or consumers of the drug, including plaintiff,
of the potential risks and serious side effects associated with its use;

e.     In light of the potential and actual risk of harm associated with the drug's
use, a reasonable person who had actual knowledge of this potential and
actual risk of harm would have concluded that Bextra should not have
been marketed in that condition.

26.     At all times the drug Bextra was designed, tested, inspected, manufactured,
assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold,
packaged, supplied and/or distributed, it was expected to reach, and did reach, users and/or
consumers of the drug across the United States, including plaintiff, without substantial change in
the defective and unreasonably dangerous condition in which it was sold.

27.     At all times, plaintiff used Bextra for its intended or reasonably foreseeable
purpose.

28.     As a direct, legal, proximate and producing result of the defective and
unreasonably dangerous condition of Bextra, plaintiff sustained injury and damages.

WHEREFORE, plaintiff requests judgment against defendants for a reasonable sum of
money damages in excess of $75,000, for punitive damages, for prejudgment and post-judgment
interest, for costs herein incurred and expended and for such other and further relief as the Court

deems just and proper.

## COUNT III
## STRICT PRODUCTS LIABILITY
## FAILURE TO WARN

29.     Plaintiff repeats and realleges each of the allegations contained in this Petition.

30.     Bextra was defective and unreasonably dangerous when it left the possession of defendants in that it contained warnings insufficient to alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff, to the dangerous risks and reactions associated with Bextra when used for its intended or reasonably foreseeable purpose. Those dangerous risks and reactions included, but were not limited to, heart attack, stroke and/or death and other serious and life threatening side effects.

31.     At all times, plaintiff used the drug for its intended or reasonably foreseeable purpose.

32.     Plaintiff could not have discovered any defect in the drug through the exercise of care.

33.     Defendants, as manufacturers and sellers of a prescription drug, are held to the level of knowledge of an expert in the field.

34.     The warnings that were given by defendants were not accurate or clear and/or were ambiguous.

35.     Defendants had a continuing duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff, of the potential risks and serious side effects associated with the use of Bextra.

36.     As a direct, legal, proximate and producing result of defendants' failure to warn, plaintiff sustained injury and damages.

WHEREFORE, plaintiff requests judgment against defendants for a reasonable sum of

money damages in excess of $75,000, for punitive damages, for prejudgment and post-judgment interest, for costs herein incurred and expended and for such other and further relief as the Court deems just and proper.

## COUNT IV
## BREACH OF EXPRESS WARRANTY OF MERCHANTABILITY

37.    Plaintiff realleges all prior paragraphs of this Petition as if fully set out herein.

38.    Defendants made express representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Bextra.

39.    Defendants through their detail sales representatives, made representations of the safety and efficacy of their product, Bextra.

40.    Bextra does not conform to the express representations made through defendants' advertising and marketing efforts.

41.    Bextra does not conform to the express representations made by defendants' agents/sales representatives.

42.    Defendants' conduct in this matter caused or contributed to cause the injuries and damages suffered by plaintiff.

WHEREFORE, plaintiff requests judgment against defendants for a reasonable sum of money damages in excess of $75,000, for punitive damages, for prejudgment and post-judgment interest, for costs herein incurred and expended and for such other and further relief as the Court deems just and proper.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

43.    Plaintiff repeats and realleges each of the allegations contained in the Petition.

44.    At the time that defendants designed, tested, inspected, manufactured, assembled,

9

developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Bextra, defendants knew of the intended, reasonably foreseeable and/or ordinary use of Bextra and impliedly warranted the drug to be of merchantable quality and safe and fit for such use.

45.     Plaintiff, in ingesting Bextra, reasonably relied upon the skill and judgment of defendants as to whether Bextra was of merchantable quality and safe and fit for its intended, reasonably foreseeable and/or ordinary use.

46.     In breach of the implied warranty given by defendants, Bextra was not of merchantable quality or safe or fit for its intended, reasonably foreseeable and/or ordinary use because the product was and is unmerchantable, in a defective condition and unreasonably dangerous and unfit for the intended, reasonably foreseeable and/or ordinary purpose for which it was intended as described above.

47.     In breach of the implied warranty given by defendants, Bextra was not of merchantable quality or safe or fit for its intended, reasonably foreseeable and/or ordinary use because, among other things:

> a.     Use of Bextra carried a risk of, among other things, heart attack, stroke and/or death and other serious and life threatening side effects;
>
> b.     Defendants failed to include adequate warnings with the drug that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff, of the potential risks and serious side effects of the drug;
>
> c.     Defendants failed to provide adequate post-marketing warnings or instructions after defendants knew or should have known of the potential risks and serious side effects associated with the use of the drug.

10

48.     As a direct, legal, proximate and producing result of defendants' breach of warranty, plaintiff sustained injury and damages.

WHEREFORE, plaintiff requests judgment against defendants for a reasonable sum of money damages in excess of $75,000, for punitive damages, for prejudgment and post-judgment interest, for costs herein incurred and expended and for such other and further relief as the Court deems just and proper.

## COUNT VI
## FRAUD

49.     Plaintiff repeats and realleges each of the allegations contained in the Petition.

50.     Defendants recklessly, knowingly, intentionally, and fraudulently misrepresented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff, the safety and efficacy of the drug and/or recklessly, knowingly, intentionally and fraudulently concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff, material, adverse information regarding the safety and efficacy of Bextra.

51.     Defendants' misrepresentations were communicated to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff, with the intent that they reach users and/or consumers of the drug, including plaintiff.

52.     Defendants either knew or should have known that the representations were false.

53.     Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of the drug with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff, would rely on such in selecting Bextra as a pain reliever.

54.     Defendants made these misrepresentations and/or actively concealed information

11

concerning the safety and efficacy of Bextra in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

55.    Defendants made these misrepresentations and actively concealed adverse information at a time when defendants knew or should have known that its drug product had defects, dangers and characteristics that were other than what Defendants had represented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff.    Specifically, defendants misrepresented to and/or actively concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff, that:

> a.    There had been insufficient studies regarding the safety and efficacy of the drug;
>
> b.    The drug was fully and adequately tested, despite knowing that there had been insufficient or inadequate testing of the drug;
>
> c.    Prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious prothrombotic reactions, including, but not limited to, adverse cardiovascular events;
>
> d.    Defendants knew or should have known of reports of increased heart attacks and/or strokes associated with the use of the drug;
>
> e.    Defendants knew or should have known of the greatly increased risk of developing heart attacks and/or strokes associated with use of Bextra; yet, despite this they were downplaying the risk of the drug.

56.    The misrepresentations of and/or active concealment by defendants were perpetuated directly and/or indirectly by defendants, its sales representatives, employees, distributors, agents and/or detail persons.

57.    The misrepresentations of and/or active concealment by defendants constitute a

continuing tort. Indeed, through defendants' product inserts, defendants continued to misrepresent the potential risks and serious side effects associated with the use of Bextra. Moreover, defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff, about the potential risks and serious side effects associated with the use of Bextra in a timely manner, yet they failed to provide such warning.

58.     Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of defendants to purchase and ingest Bextra to his detriment.

59.     As a direct, legal, proximate and producing result of the misrepresentations of defendants, plaintiff sustained injury and damages.

WHEREFORE, plaintiff requests judgment against defendants for a reasonable sum of money damages in excess of $75,000, for punitive damages, for prejudgment and post-judgment interest, for costs herein incurred and expended and for such other and further relief as the Court deems just and proper.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

60.     Plaintiff repeats and realleges each of the allegations contained in the Petition.

61.     Defendants negligently misrepresented or failed to exercise reasonable care in representing to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff, the safety and efficacy of the drug and/or negligently concealed or failed to exercise reasonable care by concealing and failing to disclose to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff, material, adverse information regarding the safety and efficacy of Bextra.

62.     Defendants' misrepresentations were communicated to the medical,

13

pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff, with the intent that they reach users and/or consumers of the drug, including plaintiff.

63.    Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Bextra in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

64.    Defendants either knew or should have known that the representations were false.

65.    Defendants knew or should have known that the misrepresentations and/or omissions concerning the safety and efficacy of the drug would be relied upon by the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff, in selecting Bextra as a pain reliever.

66.    Defendants made these misrepresentations and actively concealed adverse information at a time when defendants knew or should have known that its drug product had defects, dangers and characteristics that were other than what defendants had represented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff. Specifically, defendants misrepresented to and/or actively concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff, that:

        a.    There had been insufficient studies regarding the safety and efficacy of the drug;

        b.    The drug was fully and adequately tested, despite the fact that there had been insufficient or inadequate testing of the drug;

        c.    Prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious adverse cardiovascular events and strokes;

14

     d.      Defendants knew or should have known of reports of heart attacks associated with the use of the drug;

     e.      Defendants knew or should have known of the greatly increased risk of heart attacks, strokes and/or death and other serious and life threatening side effects associated with the drug; yet, despite this was downplaying the risks of the drug.

67.     The misrepresentations of and/or active concealment by defendants were perpetuated directly and/or indirectly by defendants, their sales representatives, employees, distributors, agents and/or detail persons.

68.     The misrepresentations of and/or active concealment by defendants constitute a continuing tort. Indeed, through defendants' product inserts, defendants continued to misrepresent the potential risks and complications associated with Bextra. Moreover, defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including plaintiff, about the potential risks and serious side effects associated with the use of Bextra in a timely manner, yet it failed to provide such warning.

69.     Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of defendants to purchase and ingest Bextra to his detriment.

70.     As a direct, legal, proximate and producing result of the misrepresentations of defendants, plaintiff sustained injury and damages.

WHEREFORE, plaintiff requests judgment against defendants for a reasonable sum of money damages in excess of $75,000, for punitive damages, for prejudgment and post-judgment interest, for costs herein incurred and expended and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

J. Scott Bertram                      MO #23715
Benjamin A. Bertram              MO #56945
The Bertram Law Firm, LLC
9229 Ward Parkway, Suite 225
Kansas City, MO 64114
(816) 523-2205
FAX (816) 523-8258

Thomas P. Cartmell               MO #45366
Brian J. Madden                     MO #40637
Thomas J. Preuss                    MO #54923
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100
FAX (816) 531-2372

Wm. Dirk Vandever               MO # 24463
The Popham Law Firm, P.C.
323 W. 8th Street, Ste. 200
Kansas City, MO 64105
(816) 221-2288
FAX (816) 221-3999

James P. Frickleton               MO #31178
Bartimus, Frickleton, et al.,
11150 Overbrook Drive
Leawood, KS 66211
(913) 266-2300
FAX (913) 266-2366

Grant L. Davis                      MO #34799
Shawn G. Foster                    MO #47663
Davis Bethune & Jones, LLC
Ste. 2930
1100 Main St.
P.O. Box 26250
Kansas City, MO 64196
(816) 421-1600
FAX (816) 472-5972

ATTORNEYS FOR PLAINTIFF

16

## ATTACHMENT 1

### LIST OF ATTORNEYS

J. Scott Bertram     MO #23715
Benjamin A. Bertram   MO #56945
The Bertram Law Firm, LLC
9229 Ward Parkway, Suite 107
Kansas City, MO 64114
(816) 523-2205
FAX (816) 523-8258

Thomas P. Cartmell    MO #45366
Brian J. Madden      MO #40637
Thomas J. Preuss     MO #54923
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100
FAX (816) 531-2372

Wm. Dirk Vandever    MO #24463
The Popham Law Firm, P.C.
323 W. 8th Street, Ste. 200
Kansas City, MO 64105
(816) 221-2288
FAX (816) 221-3999

James P. Frickleton    MO # 31178
Bartimus, Frickleton, et al.,
11150 Overbrook Drive
Leawood, KS 66211
(913) 266-2300
Fax (913) 266-2366

Grant L. Davis       MO #34799
Shawn Foster       MO #47663
Davis Bethune & Jones, LLC
1100 Main Street, Suite 2930
P.O. Box 26250
Kansas City, MO 64196
(816) 421-1600
Fax (816) 472-5972

ATTORNEYS FOR PLAINTIFFS